Case 3:25-cr-00034-TJC-MCR   Document 1   Filed 01/31/25   Page 1 of 9 PageID 1

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

1.31.2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | CASE NUMBER: 3:25-mj-1051-MCR |
| FREDI ROCAEL HERRERA-SONTAY | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about January 29, 2025, in the Middle District of Florida, and elsewhere, the defendant,

> knowing and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, did transport and move the alien within the United States by means of transportation and otherwise, in furtherance of such violation of law, for the purpose of private financial gain,

in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).  I further state that I am a Border Patrol Agent of the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant
Stephen Garland

Sworn to before me and subscribed in my presence,

January 31, 2025                              at           Jacksonville, Florida

MONTE C. RICHARDSON
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
## AND MATERIAL WITNESS WARRANT

I, Stephen Garland, being a duly sworn and appointed Border Patrol Agent (BPA) for the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, hereby make the following statement.

1. I am a Border Patrol Agent for the United States Border Patrol and have been so employed for over 16 years. I have training and experience in the enforcement of the immigration and nationality laws of the United States. In addition, I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants.

2. The statements contained in this affidavit are based on my personal experience and observations as well as the experiences and observations of fellow Border Patrol Agents and other law enforcement officers as they have described them to me. This affidavit does not contain every fact regarding the investigation but sets forth sufficient facts to establish probable cause to believe that on January 29, 2025, FREDI ROCAEL HERRERA-SONTAY, a citizen of Guatemala, transported an alien unlawfully present in the United States, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

3. This affidavit also sets forth probable cause to believe that JOSE MOLINA-TAJIBOY, a citizen of Guatemala, is a material witness in the criminal proceedings against HERRERA-SONTAY, that it would be impracticable to secure

his presence by subpoena, and that therefore a material witness warrant should be issued to secure his presence, pursuant 18 U.S.C. § 3144.

4. From training and experience, I know that criminal alien smuggling operations transport illegal aliens unlawfully in the United States from the border with Mexico to staging cities near the border in California, Arizona, New Mexico, and Texas. After they arrive in these cities, alien smugglers load the illegal aliens into vehicles and transport them to metropolitan areas in the United States. This travel is often broken into several different segments utilizing different drivers and vehicles to minimize detection. The smuggled illegal aliens are primarily from Mexico, Guatemala, Honduras, and El Salvador. Smuggling cartels in the United States are usually operated by Mexican nationals in Mexico and in the United States.

5. On January 29, 2025, at approximately 1:00 a.m., Border Patrol Agent-Intelligence (BPA-I) Armando Martinez and I were patrolling Interstate 75 (I-75) in the southbound lanes when I observed a grey Toyota Tacoma truck matching the description of a vehicle for which the Border Patrol had intelligence that it was transporting aliens between Atlanta, Georgia, and South Florida and had traveled through Columbia County, Florida, during the trip. The vehicle bore Georgia license plate TEF8479. I contacted the DHS Law Enforcement Support Center (dispatch) via service radio for confirmation of the vehicle's registration and the criminal and immigration history of the registered owner. The Law Enforcement Support Center confirmed that HERRERA-SONTAY was the registered owner of

2

the vehicle and that he was subject to a final order of removal from the United States. This information, along with the location and direction of travel of the vehicle, was relayed to Supervisory Border Patrol Agent (SBPA) Matthew Bowers, BPA Michael Wright, and BPA-I Juan Miranda, who were all patrolling in the area. SBPA Bowers contacted Florida Highway Patrol (FHP) as well as the Marion County Sheriff's Office (MCSO) for assistance with a stop of the vehicle.

6.  BPA-I Martinez initiated a stop on I-75 southbound near mile marker 355 in Marion County. BPA-I Martinez approached the driver's side of the vehicle and, in the Spanish language, identified himself to the occupants as a Border Patrol Agent as I approached the passenger side of the vehicle. BPA-I Martinez questioned the driver and passenger as to their identities and citizenship. The driver identified himself as FREDI ROCAEL HERRERA-SONTAY. HERRERA-SONTAY stated that he was a citizen of Guatemala and he presented an identification card and passport issued by the government of Guatemala. The passenger identified himself as JOSE MOLINA-TAJIBOY. MOLINA-TAJIBOY stated that he was a citizen of Guatemala and presented an identification card issued by the government of Guatemala, along with a regional visitor card issued by the government of Mexico. Neither HERRERA-SONTAY nor MOLINA-TAJIBOY made any claim to have any immigration documents to allow them to be in or remain in the United States legally.

7. Both individuals were administratively arrested for being illegally present in the United States and were placed in separate MCSO patrol vehicles. During a search incident to arrest, $2,588 in cash was found on HERRERA-SONTAY's person.

8. During an inventory search of the vehicle, four cell phones were found. One phone was in HERRERA-SONTAY's hands at the time of the stop and the other phones were in the driver's side area within arm's reach of the driver's seat. A cashier's check for $1,500 made out to "Fredi Rocael" with the purchaser listed as "Bad Boyz Bonding" was found in the console area. The rear seat of the truck contained a small black bag containing two cell phones and various charging cords, along with a plastic grocery bag containing clothing items. Both bags were claimed by MOLINA-TAJIBOY. Also in the back seat was a female jacket that appeared to be in good, clean condition, though no females were present at the time. The bed of the truck had a hard-shell camper cover on it equal to the height of the cab. The bed contained multiple heavy blankets, a cooler, a trash can, two five-gallon buckets, and various clothing items.

9. Records on the CARFAX web site reflected that the vehicle was purchased by HERRERA-SONTAY on February 4, 2022, and that the mileage at the time of the purchase was 88,054. The vehicle's odometer showed that the mileage at the time of the stop was 435,814, meaning that the vehicle had been driven 347,760 miles since HERRERA-SONTAY purchased it three years before.

This averages out to 9,660 miles per month. For comparison, according to the U.S. Department of Transportation (fhwa.dot.gov), the national average of mileage per month is 1,123.

10. HERRERA-SONTAY and MOLINA-TAJIBOY were transferred to Border Patrol vehicles and transported to the Jacksonville Border Patrol Station for further questioning, biometric confirmation, and processing. During processing, BPA Michael Wright entered both subjects' fingerprints, names, and dates of birth into a biometric identification system to determine whether they had ever been encountered by immigration authorities. The records returned by the system reflected that HERRERA-SONTAY had multiple previous immigration encounters and was subject to a final order of removal issued on July 7, 2000, and was most recently removed from the United States on July 11, 2018. No results returned for MOLINA-TAJIBOY, indicating no prior encounters. There was no record that MOLINA-TAJIBOY had ever applied for permission to enter, pass through, or remain in the United States, confirming that he was never legally admitted into the United States.

11. At the Border Patrol Station, BPA-I Miranda and BPA-I Martinez interviewed HERRERA-SONTAY in Spanish. Before the interview, BPA-I Miranda advised HERRERA-SONTAY of his constitutional rights and he acknowledged that he understood his rights and was willing to give a statement without a lawyer present. He then signed a waiver of rights form. During the

interview, HERRERA-SONTAY was asked where he was coming from when he was stopped and he said he was coming from Atlanta. He said that he lived in a hotel in Norcross, Georgia. When asked if he knew MOLINA-TAJIBOY, he replied that he did not know him. He was asked who MOLINA-TAJIBOY was and responded that he called him "Francisco." He was asked if he knew where MOLINA-TAJIBOY was from and he stated that MOLINA-TAJIBOY said that he had come from Houston, Texas. HERRERA-SONTAY said that he picked up MOLINA-TAJIBOY at a gas station in west Atlanta. He was asked how the arrangements were made and how he knew to pick up MOLINA-TAJIBOY at the gas station and he said that he had received a phone call from his boss, who told him that the person he was to pick up would be standing at gas pump 9.

12.   When asked who organizes the transportations, HERRERA-SONTAY stated that various people do. When asked why he picked up MOLINA-TAJIBOY, he stated that it was because MOLINA-TAJIBOY needed to go to Florida. When asked where he was going in Florida, he said that they were going to Miami. HERRERA-SONTAY was asked how much he was paid and he said $250. He said he is generally paid $250 per person transported. He was asked how he was paid and he said that the person who brings the passengers to him is the one who pays him. He also said that he was sometimes paid before transporting and sometimes after transporting the individuals. HERRERA-SONTAY said that he did not know the person who dropped off MOLINA-TAJIBOY but claimed to have the person's

6

phone number stored in his cell phone. HERRERA-SONTAY was asked how many times he had transported aliens and he replied that he did not know, that he did not have a clue how many times.

13. At the Border Patrol Station, BPA-I Miranda and BPA-I Martinez also interviewed MOLINA-TAJIBOY in Spanish. During the interview, MOLINA-TAJIBOY stated that he is a Guatemalan citizen and that he was traveling to Florida to work. He said that he owed money for his smuggling fees and he believed that he owed about $20,000, and he stated that he was going to Florida to work off those fees. MOLINA-TAJIBOY stated that he had crossed the United States/Mexico border about 13 or 14 days before the vehicle was stopped.

14. I received information from the Gwinnett County (Georgia) Police Department (GPD) that on January 25, 2025, they had conducted a traffic stop of the same Toyota Tacoma. HERRERA-SONTAY was driving the vehicle and was issued a warning for speeding. During the stop, three other occupants were in the vehicle. None of the individuals had identification but they provided their names and dates of birth, identifying themselves as Hugo Hernandez-Sanchez, Javier Zapycactle-Xalamihua, and Alcantares Jaime-Garcia, each of whom was a citizen of Mexico. During this encounter, a Hispanic female claiming to be the niece of HERRERA-SONTAY arrived at the stop and picked up the three passengers. The female identified herself as Pamela Lizbeth Herrera. Immigration records reflect that Pamela Herrera had been previously encountered by Jacksonville Border Patrol

7

agents during the investigation of an event that occurred in Jacksonville on February 12, 2024. During this encounter, Pamela Herrera admitted to making more than thirty trips between Atlanta and Florida to transport aliens who were illegally present in the United States.

15. Based upon the foregoing facts, I believe there is probable cause to establish that on January 29, 2025, FREDI ROCAEL HERRERA-SONTAY transported an alien who was illegally present in the United States, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and that JOSE DOMINGO MOLINA-TAJIBOY is a material witness for whom a material witness arrest warrant should be issued, pursuant to 18 U.S.C. § 3144.

_____
Stephen Garland
Border Patrol Agent
United States Border Patrol
Jacksonville, Florida

Sworn to and subscribed before me this 31st day of January 2025.

_____
MONTE C. RICHARDSON
United States Magistrate Judge